IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-00410-CNS-MEH

ROY WHITE, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

GENERAL MOTORS LLC,

     Defendant.

---

## ORDER

---

     Before the Court is Plaintiff Roy White's Motion for Class Certification and Memorandum in Support of Plaintiff's Motion for Class Certification (ECF Nos. 54 and 55). For the reasons set forth below, the Court GRANTS Plaintiff White's Motion for Class Certification.

### I. BACKGROUND[1]

     Plaintiff White filed suit against Defendant General Motors LLC in February 2021, alleging that several vehicles sold by Defendant suffered engine defects (*see, e.g,* ECF No. 1 at ¶ 1). Specifically, Plaintiff White alleged that he and others similarly situated purchased or leased one or more "model year 2011–2014 GM vehicles, manufactured on or after February 10, 2011, fitted with GM's defective Generation IV 5.3 Liter V8 Vortec 5300 LC9 engines" (*id.*; *see also*

---

[1] The background facts are drawn from Plaintiff White's Complaint and evidence submitted in support of the parties' class certification briefing. *See, e.g., Francis v. APEX USA, Inc*., No. CIV-18-583-SLP, 2021 WL 4487985, at *1 (W.D. Okla. Sept. 30, 2021).

ECF No. 56-1 at 103–05). Defendant's "Generation IV" engines were placed in several well-known vehicles, including the Chevrolet Avalanche and GMC Yukon, as well as the 2011 GMC Sierra that Plaintiff White purchased (ECF No. 1 at 1–2 ¶ 2; *see also* ECF No. 56 at 1; ECF No. 56-1 at 56-1 at 103–05; ECF No. 56-20 at 7). These "Class Vehicles," and their allegedly defective Generation IV engines, are the subject of this lawsuit and Plaintiff White's allegations (*see generally* ECF No. 1; *see also* ECF No. 54 at 1).[2]

According to Plaintiff White, the Generation IV engines suffer a specific and primary defect: their piston rings "fail to keep oil in the crankcase" (ECF No. 1 at 3 ¶ 8). This failure results in the Class Vehicles' consumption of an abnormally high quantity of oil, far exceeding industry standards for oil consumption, as well as "low oil levels, insufficient lubricity levels, and corresponding internal engine component damage" (*id.* at 2 ¶ 5). As documented by an "Executive Report" regarding the "5.3 LC9 – Oil Consumption" issued in January 2010, a team of Defendant's engineers concluded, using Defendant's "Red-X" problem-solving methodology, that Generation IV engines installed in vehicles prior to 2010 incurred "excessive oil consumption" (ECF No. 62-5; *see also* ECF No. 62-4 at 6). Following the "Red-X Report," in October 2010 Defendant installed an active fuel management shield during the manufacturing process in Generation IV engines (*see, e.g.,* ECF No. 56-1 at 16). This shield, resembling an umbrella, was designed to

---

[2] The Court discusses Plaintiff White's proposed class definition further below in its analysis of the class certification motion. Throughout its Order, the Court uses the term "Class Vehicles" to refer to the vehicles manufactured by Defendant listed in Plaintiff White's proposed class definition: 2011-2014 Chevrolet Avalanches, 2011-2014 Chevrolet Silverados, 2011-2014 Chevrolet Suburbans, 2011-2014 Chevrolet Tahoes, 2011-2014 GMC Sierras, 2011-2014 GMC Yukons, and 2011-2014 GMC Yukon XLs manufactured on or after February 10, 2011 that were equipped with a Generation IV engine (*see* ECF No. 54 at 1). The parties use the term "Class Vehicles" to refer to the same vehicles (*see* ECF Nos. 55 at 3, 61 at 9).

"direct oil sprayed down to underneath" another engine component "rather than spraying [oil] directly on the crankshaft" (*id.*; *see also id.* at 17; ECF No. 62-1 at 13).

Even after Defendant's installation of the active fuel management shield, the Generation IV engines continued to suffer oil consumption problems (*see, e.g,* ECF No. 56-8 at 2). In 2013, Thomas Halka, a General Motors engineer, stated that Defendant was "still getting Gen IV LC9 engines returned due to poor oil consumption," including "full face top ring at 30k to 50k miles" (ECF No. 56-19 at 2). Mr. Halka further stated that Generation IV engines that Defendant "fixed at 50k to 80k miles [were] now consuming oil at 140k (no surprise…..)," and that "[w]e need something better" (*id*). In a 2014 "Technical Service Bulletin" addressing many of the Class Vehicles, Defendant stated that "[s]ome customers may comment about engine oil consumption of vehicles" with mileage between "30,000 to 40,000" miles due to "[o]il pulled through the PCV system or oil spray that is discharged from [active fuel management] pressure relief within the crankcase" (ECF No. 56-18 at 2). From 2007 through its last model in 2014, the Generation IV engine suffered oil consumption problems (ECF No. 56-1 at 103–04).

Because of the "oil consumption defect" caused largely by the Generation IV engine's faulty piston rings, Plaintiff White paid for an entire engine replacement of his GMC Sierra (ECF No. 1 at 3, 8 ¶¶ 7, 28; ECF No. 56-20 at 20). Others have incurred similar costs due to the Class Vehicles' oil consumption defect, or paid more for their Class Vehicles than they would have otherwise if they had known of the oil consumption defect (*see, e.g., id.* at 7, 9, 66–67, 72 ¶¶ 21, 32, 211, 253). Defendant knew of the oil consumption defect for years but continued to sell Class Vehicles without disclosing it (ECF No. 1 at 6 ¶¶ 19–20).

In his Class Action Complaint, Plaintiff White asserted six claims against Defendant, including one under the Magnuson-Moss Warranty Act on behalf of a nationwide class of individuals who purchased or leased Class Vehicles (*see generally* ECF No. 1). Defendant moved to dismiss Plaintiff White's Class Action Complaint in April 2021 (ECF No. 18). In July 2022, the Court granted in part and denied in part Defendant's dismissal motion, dismissing all but Plaintiff White's claims for breach of express and implied warranty, and striking his nationwide class allegations (*see* ECF No. 48 at 22). A discovery stay, implemented in September 2021 pending resolution of the dismissal motion, was lifted (ECF No. 51). In October 2022, Plaintiff White filed the instant class certification motion (ECF No. 54). The motion is fully briefed.[3]

## II. LEGAL STANDARD

The class action is an exceptional procedural mechanism, permitting a named plaintiff to represent a class "whose claims they wish to litigate." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014) (quotations omitted); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) ("A class action . . . enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."). To certify a class action, plaintiffs must first satisfy Federal Rule of Civil Procedure 23(a)'s requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Second, plaintiffs must show through "evidentiary proof" that at least one of three conditions defined in Federal Rule of Civil Procedure 23(b) is satisfied. *Colorado Cross Disability*, 765 F.3d at 1213 (citation

---

[3] In his Reply, Plaintiff White clarifies that he seeks only class certification of his implied warranty claim. He does not seek class certification on his express warranty claim (*see* ECF No. 64 at 7).

omitted); *see also Tabor v. Hilti, Inc*., 703 F.3d 1206, 1228 (10th Cir. 2013). Under Rule 23(b)(3),

class certification is appropriate where "questions of law or fact common to class members

predominate over any questions affecting only individual members, and [] a class action is superior

to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3); *see also Tabor*, 703 F.3d at 1230.[4] Implicit in Rule 23's certification requirement is the

proposed class's ascertainability. *See, e.g., Cherry v. Dometic Corp*., 986 F.3d 1296, 1302 (11th

Cir. 2021) ("Ascertainability is an implied prerequisite of Rule 23." (citation omitted)).

Rule 23 "does not set forth a mere pleading standard. A party seeking class certification

must . . . prove that there are *in fact* sufficiently numerous parties, common questions of law or

fact, etc." *Wal-Mart*, 564 U.S. at 350; *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258,

275 (2014) ("[P]laintiffs wishing to proceed through a class action must actually *prove*—not

simply plead—that their proposed class satisfies each requirement of Rule 23."). "In determining

the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a

cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are

met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (quotations omitted).

In the Tenth Circuit, the specific burden of proof that plaintiffs must satisfy in

demonstrating class certifiability is ill-defined. *See Colorado Cross Disability*, 765 F.3d at 1213;

*see also Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc*., 725 F.3d 1213, 1218 (10th

Cir. 2013) ("Relaxing and shifting Rule 23(a)'s strict burden of proof . . . . results in an abuse of

discretion. (quotations omitted)); *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1228 (setting forth same

---

[4] In his class certification motion, Plaintiff White seeks only to certify a class under Rule 23(b)(3) (*see* ECF No. 54 at 2). Throughout its Order, the Court also refers to Plaintiff White's memorandum in support of his class certification motion as the "class certification motion."

"strict burden of proof" standard). Some district courts have interpreted, *Trevino v. Adams*, 455 F.3d at 1162 (10th Cir. 2006), as establishing a "preponderance of the evidence" standard. *See, e.g., Francis v. APEX USA, Inc.*, No. CIV-18-583-SLP, 2021 WL 4487985, at *2 (W.D. Okla. Sept. 30, 2021) ("The party seeking class certification must show, by a preponderance of the evidence, that the Rule 23 requirements are met." (citing *Trevizo*, 455 F.3d at 1162)). But *Trevizo*—like *Wallace B. Roderick*—was not so clear. *See Trevizo*, 455 F.3d at 1162 ("A party seeking class certification must show under a strict burden of proof that all four requirements are clearly met." (citation omitted)); *see also Wallace B. Roderick*, 725 F.3d at 1218. Other district courts, acknowledging the Tenth Circuit's silence on this issue, have proceeded to apply the "preponderance" standard at the class certification stage. *See Payne v. Tri-State CareFlight*, LLC, 328 F.R.D. 601, 621 n.12 (D.N.M. 2018) ("[A]lthough the Tenth Circuit has not yet explicitly adopted the preponderance standard for fact-finding in class certification analyses, it most likely will, and the Court will employ that standard here." (collecting cases)).

The Court finds *Payne*'s reasoning persuasive, and consistent with the weight of other circuits that have explicitly adopted the preponderance standard for factfinding at the class certification stage. *See id.*; *see also Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) ("The party seeking class certification bears the burden of establishing by *a preponderance of the evidence* that each of Rule 23's requirements has been met." (citation omitted) (emphasis added)); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008), *as amended* (Jan. 16, 2009) ("Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."); *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015) ("The party seeking certification bears the burden of demonstrating that certification is proper by a

preponderance of the evidence." (citation omitted)).[5] Accordingly, the Court applies the preponderance standard in its analysis of Plaintiff White's class certification motion.

## III. ANALYSIS

Having considered the class certification motion, related briefing and factual material, and relevant legal authority, the Court grants Plaintiff White's class certification motion.

### A. Standing

Before proceeding to its merits analysis of Plaintiff White's class certification motion, the Court addresses Defendant's standing challenge to Plaintiff White and putative class members (ECF No. 61 at 17). Defendant argues that Plaintiff White and putative class members lack Article III standing because Plaintiff White is required to allege that his "particular product actually" and concretely exhibited the defect, not that it was speculatively "at risk" for manifesting a defect (*id.*). Defendant further contends that Plaintiff White's allegation that class members "overpaid" does not meet his "affirmative obligation" to show the alleged defect "actually materialized in all Class Vehicles" (*id.* at 18). Plaintiff White argues essentially that he and all other putative class members "overpaid for defective vehicles" based on Defendant's breach of its implied warranty, amounting to an economic injury that confers Article III standing (ECF No. 64 at 11). The Court agrees with Plaintiff White.

For a federal court to exercise jurisdiction over a suit, the plaintiff must have standing to sue. *See, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing consists of three

---

[5] The Ninth Circuit's recent and thorough analysis of this issue—and resulting conclusion that the preponderance standard applies—is particularly persuasive. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir.) (en banc), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) To quote one excerpt of this analysis: "Because the application of Rule 23 to certify a class does not alter the defendants' rights or interests in a substantive way, there is no basis for applying a heightened standard of proof beyond the traditional preponderance standard." *Id.*

elements, and a plaintiff—as the party invoking federal jurisdiction—bears the burden of satisfying them. *See, e.g. Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff must have suffered an "injury in fact" that is "fairly traceable" to the defendant's challenged conduct and that is "likely to be redressed by a favorable judicial decision." *Id.* (citation omitted). If the plaintiff fails to meet this burden, "there is no case or controversy for the federal court to resolve," and the federal court cannot exercise jurisdiction over the plaintiff's claims. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quotation omitted); *see also* U.S. Const. art. III, § 2.

According to Defendant, *TransUnion* demands the assertion of "specific, materialized, and concrete" harms, and claims that Plaintiff White's allegations fail to meet this standard (ECF No. 61 at 17 (citing *TransUnion*, 141 S. Ct. at 2214)). To be sure, *TransUnion* was clear: "No concrete harm, no standing." *TransUnion*, 141 S. Ct. at 2214. But the Court agrees with Plaintiff White that alleged economic injuries—including forms of overpayment—are concrete (ECF No. 64 at 11). "[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and *monetary harms*." *Id.* at 2204 (emphasis added). Other courts have concluded—some against substantially similar factual backdrops—that allegations of economic loss satisfy Article III's standing requirement. *See, e.g., Siqueiros v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2021 WL 4061708, at *4 (N.D. Cal. Sept. 7, 2021) ("[The] conclusion that [p]laintiffs have Article III standing because they overpaid for their vehicles is thus entirely consistent with the longstanding rule, reaffirmed in *TransUnion*, that monetary injuries are sufficiently tangible and concrete under Article III."); *Hampton v. Gen. Motors, LLC*, --- F. Supp. 3d ----, No. 21-CV-250-RAW, 2022 WL 4538440, at *2 (E.D. Okla. Sept. 28, 2022) ("[The plaintiff] suffered financial harm when he purchased a vehicle with the [o]il [c]onsumption

[d]efect, and economic injury is sufficient for standing under Article III." (citing *TransUnion*, 141 S. Ct. at 2204)); *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 54 F.4th 28, 39 (1st Cir. 2022) ("Nothing in *TransUnion* indicated that some monetary harms are concrete while others are not; the Court there held that properly pleaded monetary harms—like those [in the form of overpayments] asserted by the plaintiffs here—*are* sufficiently concrete" (citation omitted)). The Court finds their reasoning persuasive. Accordingly, Plaintiff has met his standing burden, alleging the type of concrete, monetary harm that *TransUnion* contemplates (*see, e.g.,* ECF No. 1 at 58 ¶ 171).

Defendant cites additional cases in support of the proposition that Plaintiff White's overpayment allegations do not satisfy his standing burden, including *Johannessohn v. Polaris Industries Inc.*, 9 F.4th 981 (8th Cir. 2021), and *Flynn v. FCA US LLC*, 39 F.4th 946 (7th Cir. 2022). These cases are distinguishable from Plaintiff White's implied warranty claim that is before the Court at the class certification stage, and provide limited and unpersuasive support Defendant's position. *See Johannessohn*, 9 F.4th at 988 ("In this circuit, plaintiffs claiming economic injury do not have Article III standing in *product defect* cases unless they show a manifest defect." (emphasis added)); *see also Flynn*, 39 F.4th at 952–53 ("Instead of citing specific evidence in the record and developing a *factual argument* demonstrating that they suffered an overpayment injury, [plaintiffs] relied on mere allegations from their complaint . . . . [they] now point to their expert reports as evidence in support of an overpayment injury [b]ut they do so for *the first time on appeal*." (emphasis added)); *cf. Otter Prod., LLC v. Triplenet Pricing Inc.*, 572 F. Supp. 3d 1066, 1075 (D. Colo. 2021), *reconsideration denied*, No. 19-cv-00510-RMR-MEH, 2022 WL 18533283 (D. Colo. Feb. 3, 2022) ("The implied warranty of merchantability simply provides that a warranty that

goods sold shall be merchantable is implied when a seller is a merchant with respect to the type of goods sold.").

In sum, Plaintiff White has met his Article III standing burden. In arguing otherwise, Defendant urges a narrowed interpretation of *TransUnion* and Article III that the Court—like others before it—rejects. *See, e.g., Siqueiros*, 2021 WL 4061708, at *4; *In re Evenflo Company*, 54 F.4th at 39. Having established that Plaintiff White has met his standing burden, the Court proceeds to its merits analysis of Plaintiff White's class certification motion.

### B. Ascertainability

Plaintiff White argues that a "single objective criterion" determines whether an individual is a class member—their purchasing or leasing of a Class Vehicle—and that for this reason the ascertainability requirement is satisfied (ECF No. 55 at 13). Defendant contends that Plaintiff White cannot demonstrate the proposed class is ascertainable because identifying potential class members would require individualized inquires based on extensive fact-finding (ECF No. 61 at 19; *see also id.* at 35).[6] The Court agrees with Plaintiff White.

Although not specified in Rule 23, a prerequisite to a class's certification is its ascertainability. *See Cherry*, 986 F.3d at 1302 ("Ascertainability is an implied prerequisite of Rule 23." (citation omitted)). As with the burden of proof governing the fact-finding at the class

---

[6] In two sentences, Defendant also appears to argue that Plaintiff White's class definition would result in putative class members acquiring Class Vehicles after the class notice period, "violat[ing] the rule against one-way intervention" and due process (ECF No. 61 at 35). The Court declines to consider Defendant's passing arguments. *See, e.g., Cardoza-Estremera v. Berrios*, No. CV 16-2318 (ADC), 2017 WL 3098089, at *2 (D.P.R. July 20, 2017) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." (citation omitted)); *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (finding "stray sentences" and "passing reference[s]" to Rule 23(a)(3)'s typicality requirement "insufficient to adequately brief any argument on [the] point" (quotations omitted)).

certification stage, "the Tenth Circuit . . . has not directly addressed whether, or to what extent, ascertainability is a requirement for class certification." *Smith v. LifeVantage Corp.*, 341 F.R.D. 82, 93 (D. Utah 2022) (footnote omitted); *but see Colorado Cross Disability*, 585 F.2d at 436 (stating in discussion of numerosity requirement that plaintiffs "must offer some evidence of established, ascertainable [class] members" (quotations omitted)). Circuits are split on the extent to which ascertainability "plays a role in the class certification analysis." *Smith*, 341 F.R.D. at 91–92 (collecting cases). For instance, the Third Circuit requires plaintiffs to show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 469–70 (3d Cir. 2020) (quotations omitted). Compare the Second Circuit:

> We conclude that a freestanding administrative feasibility requirement *is neither compelled by precedent nor consistent with* Rule 23, joining four of our sister circuits in declining to adopt such a requirement. The ascertainability doctrine that governs in this Circuit requires *only that a class be defined using objective criteria* that establish a membership with definite boundaries.

*In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (emphasis added). As *In re Petrobras* makes clear, the question of administrative feasibility in analyzing a putative class's ascertainability is one circuits have answered differently.[7] *Compare Hargrove*, 974 F.3d at 469–70, *with In re Petrobras*, 862 F.3d at 264; *Cherry*, 986 F.3d at 1302 ("Proof of administrative feasibility cannot be a precondition for certification."). *See also Smith*, 341 F.R.D. at 91–92 (collecting cases from

---

[7] Although the Tenth Circuit recently acknowledged Rule 23's "implied requirement of ascertainability," it declined to address the requirement where it was not "raised and ruled on" below. *See Naylor Farms*, 923 F.3d at 789 n.9 (quotations omitted); *but see Shook v. El Paso Cnty.*, 386 F.3d 963, 974 (10th Cir. 2004) ("Rule 23(b)(3) explicitly has a manageability criterion.") (Tacha, J., concurring in part and dissenting in part).

other circuits and further explaining split). Nonetheless, "[t]he determination whether there is [an] administratively feasible mechanism for determining whether putative class members fall within the class definition must be tailored to the facts of the particular case." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 442 (3d Cir. 2017).

In the present case, the Court need not formally adopt either ascertainability standard, because under both standards Plaintiff White's class is ascertainable. Plaintiff White moves for certification of a class defined as follows:

> All purchasers and lessees of a 2011-2014 Chevrolet Avalanche, 2011-2014 Chevrolet Silverado, 2011-2014 Chevrolet Suburban, 2011-2014 Chevrolet Tahoe, 2011-2014 GMC Sierra, 2011-2014 GMC Yukon, and 2011-2014 GMC Yukon XL manufactured on or after February 10, 2011 that was equipped with a Generation IV 5.3-liter V8 Vortec 5300 LC9 engine that was purchased or leased in the State of Colorado

(ECF No. 54 at 1).[8]

First, the class is defined with reference to objective criteria: a putative class member's purchase or leasing of a Class Vehicle in Colorado (ECF No. 55 at 13).[9] *See, e.g., Hargrove*, 974 F.3d at 469–70; *see also In re Petrobras*, 862 F.3d at 264 (determining that ascertainability "requires only that a class be defined using objective criteria that establish a membership with definite boundaries"). And although the putative class may encompass many individuals, the membership criteria—purchase or lease of a Class Vehicle in Colorado—establishes a definite boundary, and class membership is capable of being determined under Plaintiff White's definition.

---

[8] Plaintiff White has limited the proposed class to vehicles that have the "purported [engine] fixes" following Defendant's Red-X Report (ECF No. 64 at 8 n.2). It does not include vehicles with the "purported fixes" and vehicles without them.

[9] Recall that the Court and the parties define "Class Vehicles" as the vehicles listed in Plaintiff White's proposed class definition (*see* ECF Nos. 55 at 3, 61 at 9).

*See Cherry*, 986 F.3d at 1303 ("A class is 'clearly ascertainable' if we are certain that its membership is 'capable of being' determined." (citation omitted)); *see also In re Petrobras*, 862 F.3d at 264. To the extent that Defendant argues the class's potential size countenances denial of Plaintiff White's class certification motion, this argument is unavailing, given that "standards . . . allow the class members to be ascertainable." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (citation omitted).

Moreover, class members who satisfy this criteria may be gleaned from Defendant's various "records and dealership records" regarding vehicle purchases—providing objective criteria for assessing class membership—some of which Plaintiff White cites in his numerosity discussion (ECF No. 55 at 13–14; ECF No. 56-21). *See also Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 334 (5th Cir. 2019) ("Here, both [defendant's records] and the public records provide sufficient objective criteria from which to identify class members."); *In re Nexium Antitrust Litig.*, 777 F.3d at 19 ("The class definition here satisfies these [ascertainability] standards by being defined in terms of purchasers . . . during the class period . . . ."); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 526 (6th Cir. 2015) (determining that "[t]he proposed class is defined by objective criteria: anyone who purchased [the product] in [various states]" even where assessing the class and sub-classes would "require substantial review, likely of [defendant's] internal [] data"). To the extent that Defendant argues the class as defined would impermissibly result in changes to its size—that the "class today will differ from the class that will get notice, which will differ again from the class at trial"—as a matter of its *ascertainability*, this is insufficient to demonstrate that the class is not defined with reference to objective criteria (*see* ECF No. 61 at 35). *See also Hargrove*, 974 F.3d at 469–70; *Smith*, 341 F.R.D. at 96 ("The

ascertainability requirement's first concern is that class members can be identified at some point . . . . [t]he fact that the class may be temporarily over- or under-inclusive until [the point of determining liability] does not automatically preclude certification." (footnotes omitted)).

Second, there is an "administratively feasible mechanism" determining whether putative class members fall within the class definition. *Hargrove*, 974 F.3d at 469–70. As Plaintiff White contends, putative class members are identifiable through dealership and other records (ECF No. 55 at 13). *See also In re Myford Touch Consumer Litig*., No. 13-cv-03072-EMC, 2016 WL 7734558, at *8 (N.D. Cal. Sept. 14, 2016), *on reconsideration in part*, No. 13-cv-03072-EMC, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016) ("The classes sought to be certified are ascertainable. Ford maintains records of persons who purchased Ford vehicles."). For example, Plaintiff White provides a supporting affidavit identifying the specific VIN number for his vehicle, "which indicates that it is a 2011 GMC Sierra with a Generation IV 5.3L LC9 engine manufactured after February 10, 2011" (ECF No. 56 at 1). And the use of the objective criteria Plaintiff White identifies—whether a class member purchased or leased a Class Vehicle in Colorado— underscores the administrability of the putative class, enabling the Court to "distinguish[] the injured from the uninjured class members." *In re Nexium Antitrust Litig*., 777 F.3d at 19. At bottom, Plaintiff White has satisfied the administrative feasibility requirement because his class definition is "sufficiently definite so that it is administratively feasible for the [C]ourt to determine whether a particular individual is a member of the proposed class." *Hicks v. State Farm Fire & Cas. Co*., 965 F.3d 452, 464 (6th Cir. 2020) (quotations omitted). Defendant's argument that ascertaining potential class members would require individualized inquiries based on extensive fact-finding fails to persuade otherwise (ECF No. 61 at 19; *see also id.* at 35). *Cf. City Select*, 867

F.3d at 442 ("The only factual inquiry required to determine class membership is whether a particular dealership in the database received the BMW fax on one of the dates in question. Answering this factual question of identification through affidavits or other available records does not necessarily require individualized fact-finding that would be 'administratively infeasible' or 'a violation of Defendants' due process rights.'" (citation omitted)).

* * *

For the reasons set forth above, applying either ascertainability standard Plaintiff White has met his burden of demonstrating that the proposed class is ascertainable. *See In re Petrobras*, 862 F.3d at 264; *Hargrove*, 974 F.3d at 477 ("[A] plaintiff need not be able to identify all class members at class certification—instead, a plaintiff need only show that class members can be identified." (quotations omitted)).

## C. Rule 23(a)

Plaintiff White contends that he has satisfied Rule 23(a)'s four requirements. Defendant disagrees. The Court considers Rule 23(a)'s requirements in turn, ultimately concluding that Plaintiff White has shown by a preponderance of the evidence that each of Rule 23(a)'s requirements have been met.

### 1. Numerosity

Plaintiff White contends that the putative class is sufficiently numerous, citing various documents that indicate as many as 10,124 putative class members exist (*see* ECF No. 55 at 13–14). Although Defendant does not contest Plaintiff White's contention, applying—as it must—a "rigorous analysis" of this Rule 23(a) requirement, the Court agrees with Plaintiff White that he has satisfied the Rule's numerosity requirement. *Wal-Mart Stores*, 564 U.S. at 351.

Under Rule 23(a)(1), a plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a)'s numerosity inquiry is not a blunt "question of numbers." *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977). Assessing a class's numerosity is a "fact-specific inquiry," calling for the consideration of certain factors, including: "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Colorado Cross Disability*, 765 F.3d at 1215 (quotations omitted).

Considering these factors, this is an implied warranty claim regarding the sale of allegedly defective automobiles in Colorado. *See Colorado Cross Disability*, 765 F.3d at 1215. Records concerning the sales of these vehicles cited in the class certification motion demonstrate, as Plaintiff White contends, that the number of potential class members is high—for instance, the 2011, 2012, and 2013 "Model Year Sales Data Spreadsheet[s]" indicate that thousands of potential Class Vehicles have been sold (*see* ECF Nos. 56-21, 56-22, 56-23). Therefore, given the nature of this action and the documents Plaintiff White offers demonstrating the number of potential class members, based on the sales data regarding Class Vehicles, Plaintiff White has satisfied Rule 23(a)(1)'s numerosity requirement. *See also Siqueiros v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2021 WL 2115400, at *18 (N.D. Cal. May 25, 2021), *on reconsideration in part*, No. 16-CV-07244-EMC, 2021 WL 3291837 (N.D. Cal. Aug. 2, 2021) (finding numerosity requirement satisfied where plaintiffs "contend[ed] that GM sold thousands of Class Vehicles with the LC9 engine in each of the relevant states . . . . [e]ven if th[o]se numbers [were] an overestimation" because "at least one hundred of the thousands" of purchasers "[would] likely meet the class definition").

16

2. *Commonality*

Plaintiff White contends that his claim satisfies Rule 23(a)(2)'s commonality requirement because the "Class Vehicles all suffer from the same [defect] caused by the same piston rings" (ECF No. 55 at 15). Defendant argues that because Rule 23(a)(2) demands "common answers provided by class-wide proof"—and Plaintiff White lacks evidence demonstrating that the "Gen IV engine in [the] Class Vehicles" are defective without engaging in individualized inquiries— Plaintiff White cannot satisfy Rule 23(a)'s commonality requirement (ECF No. 19–21).[10] The Court agrees with Plaintiff White, finding that he has satisfied Rule 23(a)(2)'s commonality requirement (ECF No. 55 at 15).

Rule 23(a)(2) is disjunctive: a plaintiff may satisfy its commonality requirement if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) ("In determining whether the . . . commonality requirement[] ha[s] been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient."). In determining whether a plaintiff has satisfied Rule 23(a)(2)'s commonality requirement, courts ask whether the class claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common questions— even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotations omitted). "A finding of commonality

---

[10] Several of Defendant's commonality arguments overlap with its contention that Plaintiff White has failed to satisfy Rule 23(b)(3)'s predominance requirement (*see* ECF No. 61 at 19). *See also Comcast*, 569 U.S. at 34. To the extent Defendant also frames these arguments as addressing the predominance requirement, the Court addresses them further below in its predominance analysis.

requires only a single question of law or fact common to the entire class." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (quotations omitted); *see also Wal-Mart*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (quotations and alterations omitted)). "A common contention need not be one that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quotations omitted).

Plaintiff White contends that he has met his commonality burden because the Class Vehicles allegedly "suffer from the same oil consumption defect, caused by the same defective piston rings" (ECF No. 55 at 15). The Court agrees. As Plaintiff White observes, class-wide recovery "demands proof of a defect in the vehicles as a result" of the piston rings (*id.*). *See also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 105 (E.D. Mich. 2019), *clarified on denial of reconsideration*, 340 F.R.D. 251 (E.D. Mich. 2022). This is a common question of fact that Rule 23(a)(2) contemplates: determining the "truth or falsity" of whether the Class Vehicles suffer from the alleged piston and engine defects will resolve an issue central to the implied warranty claims "in one stroke." *Wal-Mart*, 564 U.S. at 35. Other courts have concluded, in similar factual contexts, that whether products contain alleged deficiencies is a common factual issue under Rule 23(a)(2). *See, e.g., In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 355 (N.D. Cal. 2018) ("[W]hether the [m]odems [that plaintiffs purchased] contain any latency defects is a common issue of fact."); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (affirming district court's finding of commonality where the "common issue" of "whether the design of the plastic intake manifold [in an engine] was defective"); *Haag v. Hyundai Motor Am.*, 330 F.R.D. 127, 131 (W.D.N.Y. 2019) (finding commonality requirement

met where "plaintiff ha[d] demonstrated that the claims asserted by each class member would share the common questions of whether the defendant was aware of a defect in the [c]lass [v]ehicles, and whether it misled class members as to the existence of that defect"). The Court finds the reasoning in these cases persuasive in determining that Plaintiff White has satisfied his commonality burden, especially where, as here, Plaintiff White has adduced evidence demonstrating that the Class Vehicles' piston rings suffered particular defects affecting Class Vehicles' oil consumption (*see, e.g.,* ECF No. 56-8 at 2; 56-19 at 2; 56-18 at 2; 56-1 at 103–04).

In arguing otherwise, Defendant's challenge is evidentiary—that Plaintiff White cannot demonstrate commonality because he lacks class-wide proof that the alleged defect exists in the Class Vehicles (ECF No. 61 at 19–21). Defendant's argument lacks force. First, many authorities Defendant cites provide no support for its evidentiary argument. *See, e.g., Cates v. Whirlpool Corp.*, No. 15-CV-5980, 2017 WL 1862640, at *18–19 (N.D. Ill. May 9, 2017) (finding commonality requirement not satisfied where plaintiffs had not shown "that the critical issue of whether [the products were] defective [was] susceptible to classwide proof [but that] if [p]laintiffs *had* identified a common cause—specifically, some element of defective design common to all [products] then a class proceeding" would be appropriate (emphasis added)); *Edwards v. Zenimax Media Inc.,* No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *5 (D. Colo. Sept. 25, 2012) (ruling on motion to strike class allegations and concluding that class as defined was not ascertainable). And to the extent that Plaintiff White is required to provide evidence that demonstrates by a preponderance that there is at least one question of law or fact common to the class, he has done so, as explained above (*see, e.g.,* ECF No. 56-1 at 16, 47–48, 65–66; ECF No. 56-7).

Second, Defendant contends that Plaintiff White lacks evidence from a "technical expert" regarding the Class Vehicles' piston ring defects—therefore requiring individualized inquiries into putative class members' injuries—and that evidence on which Plaintiff White relies in demonstrating commonality "[is] not evidence of a common piston ring defect in all Class Vehicles" (ECF No. 61 at 22). The Court disagrees. Plaintiff White is not *required* to adduce "technical expert" evidence proving the defects' manifestation to meet his *commonality* burden at the class certification stage—especially where, as here, he has identified evidence showing that the factual question of the piston rings' defectiveness is common to the class and can be answered on a class-wide basis (*see, e.g.,* ECF No. 56-8 at 2; 56-19 at 2; 56-18 at 2; 56-1 at 103–04). *See also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) ("[P]roof of the manifestation of a defect is not a prerequisite to class certification." (citation omitted)); *Wal-Mart*, 564 U.S. at 350. *Cf. Grodzitsky v. Am. Honda Motor Co*., 957 F.3d 979, 986 (9th Cir. 2020) (finding that district court did not abuse its discretion in excluding expert opinion regarding commonality where the expert "did not and *could not* provide a reliable opinion demonstrating a common defect" (emphasis added)).

Moreover, Defendant's challenge to the evidence Plaintiff White offers in support of his class certification motion—for instance, that the Red-X report concerned a different model year vehicle than any Class Vehicle, and that some of Thomas Halka's testimony demonstrates that the pistons were not defective—is unavailing (*see* ECF No. 61 at 23). At this stage of litigation, the Court asks whether Plaintiff White has shown by the preponderance of the evidence that a question of fact is common to the class. *See* Fed. R. Civ. P. 26(a)(2). Looking at the evidence offered in support of his class certification motion, he has (*see, e.g.,* ECF No. 56-8 at 2; 56-19 at 2; 56-18 at

2; 56-1 at 103–04). And to the extent that Defendant's arguments invite the Court to assess the merits of Plaintiff White's claim in making its commonality finding Rule 23(a)(2), the Court declines Defendant's invitation. *See Shook*, 386 F.3d at 971 ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (quotations omitted)); *see also Gold v. Lumber Liquidators, Inc*., 323 F.R.D. 280, 287 (N.D. Cal. 2017) ("[Defendant's] arguments may prove compelling later in this litigation in attacking the merits of plaintiffs' claims. They are not, however, enough to defeat commonality."); *Alcantar*, 800 F.3d at 1053.

In sum, and for the reasons set forth above, Plaintiff White has shown by a preponderance of the evidence that a question of fact is common to the class. *See* Fed. R. Civ. P. 23(a)(2). Therefore, he has met his commonality burden. *See also Wal-Mart*, 564 U.S. at 359.

### 3. Typicality

Plaintiff White contends that his implied warranty claim is typical of the class because his claim arises from the same event as other class members, the acquisition of a defective Class Vehicle, and is premised on the same legal theory, Defendant's breach of an implied warranty (ECF No. 55 at 16). Defendant argues that Plaintiff White's claim is not typical because he owns only one type of Class Vehicle—that is not used and was not leased—as well as that his claim is not typical of class members with timely claims (ECF No. 61 at 33–34). The Court agrees with Plaintiff White that he has satisfied the typicality requirement.

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Rule 23(a)'s typicality requirement "do[es] not require that

every member of the class share a fact situation identical to that of the named plaintiff." *Colorado Cross Disability*, 765 F.3d at 1216 (citation omitted). "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (quotations omitted).

Plaintiff White's claim is based on the same legal theory as other class members: Defendant's breach of an implied warranty regarding the Class Vehicles (*see* ECF No. 64 at 7, 20). *See also Menocal*, 882 F.3d at 914. Even if, as Defendant contends, some putative class members leased, rather than purchased, a Class Vehicle of another model, this does not render Plaintiff White's claim atypical. *See Colorado Cross Disability*, 765 F.3d at 1216; *see also Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 610 (D. Kan. 2014) ("[N]one of th[e] factual differences [that the defendant contended defeated typicality] bear on the common inquiry required by plaintiff's theory of defect: whether the [devices] were defective when sold."). At bottom, the claims of all class members, including Plaintiff White, are premised on the same theory of recovery: that Defendant sold them vehicles, specified in the class definition, containing a "Generation IV 5.3-liter V8 Vortec 5300 LC9 engine" with defective pistons (ECF No. 55 at 1). *See also Rodriguez v. Peak Pressure Control, L.L.C.*, No. 2:17-cv-00576-JCH-JFR, 2020 WL 3000415, at *8 (D.N.M. June 4, 2020) (concluding plaintiff met typicality requirement where claim of all class members "share[d] the same theory" and class members sought "identical relief"). And to the extent that other class members' claims may not be subject to the relevant statute of limitations, this is insufficient—contrary to Defendant's argument—to defeat typicality (ECF No. 61 at 34). *See, e.g., Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D.

529, 537 (D. Kan. 1995) ("Even where the class representative's claim may be questionable due to a statute of limitations . . . defense, typicality may be found if the claim itself is based on the same event or legal theory as the class claims." (citation omitted)).[11]

### 4. Adequacy

Plaintiff White contends that he and class counsel will adequately protect the class's interests, given that his interests do not conflict with the class's interest and counsel's competency (ECF No. 55 at 16–17). Defendant argues that Plaintiff White is not an adequate class representative because his claims are not typical of the class and there are conflicts of interest within the class (ECF No. 61 at 34). The Court agrees with Plaintiff White.

Rule 23(a)(4) requires that a named plaintiff "will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hill v. Aspen Contracting, Inc.*, No. 1:20-cv-00149-SWS-MLC, 2021 WL 2662296, at *5 (D.N.M. Feb. 22, 2021) (quotation omitted); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20

---

[11] Defendant specifically argues that Plaintiff White's claim is not "typical of class members whose claims are timely" (ECF No. 61 at 34). In ruling on the instant class certification motion, this assertion alone is insufficient to defeat typicality. Defendant has failed to show that the "unique" timeliness defense against Plaintiff White's claim would be a "major focus" of litigation that would render his claims atypical. *See* 1 Newberg and Rubenstein on Class Actions § 3:45 (6th ed.) ("Unique defenses are not invariably disabling. A unique defense that is insignificant or improbable will not render the proposed class representative's claims atypical. Only if the unique defense is likely to be a 'major focus' of the litigation may the proposed representative's claims be rendered atypical." (footnotes omitted) (quotations omitted)); *see also id.* ("[C]ourts have balked at rejecting certification merely on the assertion that the proposed representative's claims are subject to a unique defense."). Although the Court is skeptical of Defendant's argument, it is free—should it choose to do so, and mindful of the Court's skepticism—to move later to decertify the class. *See id.* ("[T]ypicality will generally not be defeated by allegations that the proposed class representative . . . may face a statute of limitation defense . . . ." (footnote omitted)). *Cf.* Fed. R. Civ. P. 23(c)(1)(C); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012), *aff'd* 555 F. App'x 37 (2d Cir. 2014) ("A defendant seeking to decertify a class bear[s] a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class." (quotations omitted)).

(1997) ("The adequacy heading also factors in competency and conflicts of class counsel." (citations omitted)).

First, Plaintiff White and class counsel have no conflicts of interest with other class members. As Plaintiff White observes, he asserts the same theory of liability arising from Defendant's conduct and the sale of Class Vehicles as other class members (*see* ECF No. 55 at 17). Defendant's contrary assertion is premised on its rehashed argument that factual differences exist between how and when class members purchased or leased their Class Vehicles. For substantially the same reason the Court rejected this argument in determining that Plaintiff White's claims were typical of the class, it also concludes this argument fails to persuade that an impermissible conflict of interest exists between Plaintiff White and other class members (ECF No. 61 at 34). *See, e.g.,* 1 Newberg and Rubenstein on Class Actions § 3:58 (6th ed.) ("[N]ot every potential distinction between the proposed representative and other class members will render the representative inadequate. Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a proposed class representative from meeting the Rule 23(a)(4) adequacy requirement." (footnotes omitted)).

Second, Plaintiff White and counsel will vigorously prosecute this action on behalf of the class. *See Hill*, 2021 WL 2662296, at *5. Counsel has litigated this action through dismissal briefing and discovery, is qualified to serve as class counsel, and has provided thorough and competent briefing on the issue of class certification (*see generally* ECF No. 56-25). *See also Hill*, 2021 WL 2662296, at *5 (concluding there was "no legitimate question" regarding named plaintiff and counsel's adequacy where plaintiff had "vigorously been litigating [the] action . . . engaged in discovery [and] proffered intelligible arguments in an effort to certify [the] proposed class").

Accordingly, Plaintiff White has shown by a preponderance of the evidence that he and class counsel will adequately protect the class's interests. *See* Fed. R. Civ. P. 23(a)(4).[12]

* * *

For the reasons set forth above, Plaintiff White has, by a preponderance of the evidence, satisfied Rule 23(a)'s threshold certification requirements. *See* Fed. R. Civ. P. 23(a). The Court now proceeds to its analysis of Plaintiff White's class certification motion under Rule 23(b)(3).

### D.  Rule 23(b)(3)

Plaintiff White contends that he has satisfied Rule 23(b)(3)'s predominance and superiority requirements. Defendant disagrees. The Court considers Rule 23(b)(3)'s requirements in turn, ultimately concluding that Plaintiff White has shown by a preponderance of the evidence that each of Rule 23(b)(3)'s requirements have been met.

#### 1.  Predominance

***Legal Standard.*** Under Rule 23(b)(3), a plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Although similar to its commonality counterpart, a court's predominance inquiry under Rule 23(b)(3) is "even more demanding." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citation omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). In conducting this inquiry, courts must give "careful scrutiny to the relation between common and individual questions in a

---

[12] For these same reasons, appointment of DiCello Levitt LLC and Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. as class counsel, as requested in Plaintiff White's class certification motion, is appropriate under Federal Rule of Civil Procedure 23(g) (ECF No. 54 at 2). *See also* Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) (setting forth factors to consider in appointing class counsel).

case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see also Naylor Farms*, 923 F.3d at 789 ("To satisfy Rule 23(b)(3), a plaintiff must show that common questions subject to generalized, classwide proof *predominate* over individual questions." (citation omitted)). An "individual question" is one where "members of a proposed class will need to present evidence that varies from member to member," whereas a "common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453 (quotation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* at 453 (quotation omitted); *see also Naylor Farms*, 923 F.3d at 789.

Courts, engaging in their predominance inquiries, take a two-step approach. *See, e.g., CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). First, courts must "characterize the issues in the case as common or not." *Id.* Then, courts "weigh which issues predominate." *Id.*; *see also* 2 Newberg and Rubenstein on Class Actions § 4:50 (6th ed.) ("The predominance analysis logically entails two steps—the characterization step and the weighing step."). "Once the issues have been characterized, courts then loosely compare the issues subject to common proof against the issues subject solely to individualized proof to *assess* whether the common issues predominate." *Id.*; *see also Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 168 (D.N.M. 2016) (stating that courts "compar[e] the total time [they] will most likely spend on common versus individual questions." (citations omitted)). This inquiry begins with "the elements of the underlying cause of action." *CGC Holding*, 773 F.3d at 1088 (quotations omitted);

*cf. Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (citations omitted)). Where a plaintiff demonstrates that, after engaging in this two-step approach, common, "aggregation-enabling" issues in the case "are more prevalent or more important than individual issues," then Rule 23(b)(3)'s predominance requirement is satisfied. *Tyson Foods*, 577 U.S. at 453 (quotations omitted).

*Analysis.* Plaintiff White seeks to certify on a class basis his claim for the breach of implied warranty of merchantability against Defendant pursuant to C.R.S. §§ 4–2–314 and 4–2.5–212 (*see, e.g.,* ECF No. 1 at 70). According to Plaintiff White, he has satisfied Rule 23(b)(3)'s predominance requirement because his implied warranty claim "turns on evidence that is applicable" to all class members, and that he has presented evidence that there is a "uniform defect"—namely, the defective piston rings—in all Class Vehicles (ECF No. 55 at 20). Further, Plaintiff White's argument goes, whether the piston defect exists, and whether the defect rendered the Class Vehicles "unmerchantable," are issues that will be "resolved by evidence common" to all class members, and these common questions predominate over individual questions (*id.* at 18, 20). Defendant essentially contends that Plaintiff White cannot demonstrate predominance because there is no evidence of a common defect in the Class Vehicles—as well as that there is no common evidence of merchantability—and there is an "overwhelming number individual issues" regarding class members' "purchase experiences, uses, and performance" (ECF No. 61 at 20, 28). The Court agrees with Plaintiff White.

Under Colorado law, a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." § 4–2–314(1); *see also* § 4–2–314(2)(c) (requiring that "merchantable" goods be "fit for the ordinary purpose for which such goods are used"); *Carrado v. Daimler AG*, No. 17-CV-3080-WJM-SKC, 2018 WL 4565562, at *7 (D. Colo. Sept. 24, 2018). "In the vehicle context, [s]ince cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects." *O'Connor v. BMW of N. Am., LLC*, No. 18-CV-03190-CMA-STV, 2020 WL 1303285, at *5 (D. Colo. Mar. 19, 2020). A plaintiff must establish causation to set forth a claim for breach of implied warranty of merchantability. *See Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004).

First, the Court agrees with Plaintiff White that the issues his claims and this class action present are common. *See, e.g., CGC Holding*, 773 F.3d at 1087. For instance, his implied warranty claim, and the issue of the Class Vehicles' merchantability, turn on evidence that is susceptible to "generalized, class-wide proof": whether the piston rings in the Class Vehicles' Generation IV engines were defective at the time of sale or lease (ECF No. 55 at 20; *see also* ECF No. 64 at 14). *See also* 2 Newberg and Rubenstein on Class Actions § 4:50 (6th ed.); *CGC Holding*, 773 F.3d at 1087 (stating that predominance's "characterization task" requires courts to consider which elements of claim "are susceptible to generalized proof" and whether they "are so susceptible to predominate over those that are not" (citation omitted)); *Tyson Foods*, 577 U.S. at 453. Fundamentally, whether the Class Vehicles were merchantable, based on the quality of their piston rings, presents a "predominating question" relating to the breach of class members' implied warranties "that can resolve a central issue of this litigation in one swoop," and moreover

"addresses a critical classwide piece of evidence and will not require individual consideration that would belie class treatment." *CGC Holdings*, 773 F.3d at 1091. As Plaintiff White argues, either a piston ring defect existed in the Generation IV engines at the time the Class Vehicles were sold or leased, or it did not (ECF No. 55 at 20). Either that alleged defect rendered the Class Vehicles unmerchantable or it did not. These questions are likely to "drive the resolution of the litigation." *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020) (quotation omitted). Accordingly, the Court has no difficulty concluding that the issues in this case may be—and are—characterized as common. *See also Chamberlan*, 402 F.3d at 962 (affirming district court's "common question" determinations under Rule 23(b)(3) where its "substantive examples of the common issues" included "whether the design of the plastic intake manifold was defective" and "whether Ford was aware of the alleged design defects"); *Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 86 (D.D.C. 2015) ("[T]he plaintiffs raise common legal questions regarding their liability claims [and] [t]hese common questions, which comprise nearly the entirety of the class's liability claim, are themselves sufficient to support a finding that common issues predominate over individualized ones.").

Second, comparing the issues in this case that are subject to common proof "against the issues subject solely to individualized proof," the Court agrees with Plaintiff White that the common issues predominate (ECF No. 55 at 18–20). *See also* 2 Newberg and Rubenstein on Class Actions § 4:50 (6th ed.) (stating that once issues have been "characterized," the predominance inquiry's "weighing requirement" involves comparing the issues subject to common proof against issues subject solely to individualized proof); *Tyson Foods*, 577 U.S. at 453. The alleged oil consumption defect is inherent in the design of the Generation IV engines, and would exist at the time of sale or lease (*see* ECF No. 64 at 13–14). Given the nature of Plaintiff White's implied

warranty claim and the common questions it presents, this is not a case where "as a practical matter" the resolution of these common questions "breaks down into an *unmanageable variety* of individual legal and factual issues." *Kunneman Properties, LLC v. Marathon Oil Co*., No. 17-CV-456-GKF-JFJ, 2022 WL 1766925, at *11 (N.D. Okla. Mar. 31, 2022) (emphasis added) (quotation omitted).

In arguing that Plaintiff White has no evidence of a common defect in the Class Vehicles, Defendant contends that "[w]ithout a technical expert," Plaintiff White "cannot prove an alleged defect in all Class Vehicles" (ECF No. 61 at 21). Perhaps. But what matters at the class certification stage is not, as Defendant attempts to argue, Plaintiff White's adduction of proof to support the merits of his implied warranty claim—what matters is whether the evidence Plaintiff White adduces demonstrates, after weighing it, the common questions this case presents predominate over individual ones (ECF No. 61 at 21). *Cf., e.g., Tyson Foods*, 577 U.S. at 453; *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("Although the court may ultimately need to reach this [merits] question, it is not germane to the question of [class] certification."). And to the extent that Defendant argues that Plaintiff White lacks evidence, or has insufficient evidence to show, that there is a common question or as to whether the Class Vehicles have defective pistons that cause the oil consumption defect, the Court disagrees (ECF No. 61 at 21–22). Plaintiff White has offered sufficient evidence to show, at this stage, that a common question exists regarding the existence of this defect that predominates (*see, e.g.,* ECF No. 56-8 at 2; 56-19 at 2; 56-18 at 2; 56-1 at 103–04). At bottom, Defendant fails to persuade that individualized questions—for instance, when, how, or "in what condition" class members purchased or leased their Class Vehicles—predominate over the common questions that Plaintiff White has identified, particularly where those common

questions concern the Class Vehicles' merchantability (ECF No. 61 at 28–29). *See also* § 4–2–314; *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) ("Common issues of fact and law predominate if they "ha[ve] a *direct impact* on every class member's effort to establish liability *that is more substantial than the impact of individualized issues* in resolving the claim or claims of each class member." (quotations omitted)).

Finally, Defendant contends that its affirmative defenses raise individual questions, many of which concern the express warranty claim that Plaintiff White no longer seeks to pursue on a classwide basis, and that these questions "cannot be answered with classwide proof" (ECF No. 61 at 29). But to the extent that any affirmative defenses pose individualized questions related to the implied warranty claim, they do not defeat predominance, especially where Plaintiff White has established that common questions outweigh any individual questions that may surround class members' purchase or leasing of Class Vehicles. *See e.g, Tyson Foods*, 577 U.S. at 453 ("When *one or more* of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as *damages or some affirmative defenses* peculiar to some individual class members." (quotation omitted) (emphases added)); *Naylor Farms*, 923 F.3d at 789; *Smilow v. Sw. Bell Mobile Sys., Inc*., 323 F.3d 32, 39 (1st Cir. 2003) ("Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." (citations omitted)); *In re McKesson Governmental Entities Average Wholesale Price Litig*., 767 F. Supp. 2d 263, 273 (D. Mass. 2011).

Further, Defendant's contention that certification is improper because Plaintiff White has not "propose[d] a reliable classwide damages model" is likewise unavailing (ECF No. 61 at 30, 32). The gravamen of Defendant's argument is that individual inquiries are required to assess class members' damages (*id.* at 31).[13] For purposes of analyzing Plaintiff White's class certification motion under Rule 23(b)(3), the possible need to determine damages on an individual basis—based on class members' purchasing or leasing experiences—does not defeat predominance (ECF No. 61 at 31–32). *See, e.g., Tyson Foods*, 577 U.S. at 453; 2 Newberg and Rubenstein on Class Actions § 4:54 (6th ed.) ("[T]he black letter rule is that individual damage calculations generally do not defeat a finding that common issues predominate." (footnote omitted)); *Menocal*, 725 F.3d at 1220 ("The presence of individualized damages issues does not defeat the predominance of questions common to the [] class."); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) ("[I]ndividualized damages determinations alone cannot preclude certification under Rule 23(b)(3)." (citations omitted)); *Naylor*, 923 F.3d at 789 ("Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." (citations omitted)). *Cf. Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013) (noting that district courts "should consider the extent to which material differences in damages determinations will require individualized inquiries" but that "the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification" (quotations omitted)).

---

[13] To the extent Defendant contends that Plaintiff White cannot identify any Colorado authority under which costs of repair may serve as a proxy for "benefit of the bargain damages," and for this reason has failed to meet his predominance burden, the Court rejects Defendant's characterization of Plaintiff White's damages theory as a basis for denying certification (ECF No. 64 at 18). *Cf. Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 821 (9th Cir. 2019).

Therefore, for the reason set forth above, Plaintiff White has satisfied Rule 23(b)(3)'s predominance requirement by a preponderance of the evidence.

### 2. *Superiority*

Plaintiff White contends that a class action is a superior method for adjudicating his claim (ECF No. 55 at 22). Defendant argues that a class action is not a superior method of adjudication, given the "myriad" individual issues inherent in Plaintiff White's case, many of which Defendant acknowledges it has previously discussed (ECF No. 61 at 35). The Court agrees with Plaintiff White.

To satisfy Rule 23(b)(3), a plaintiff must show that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Pertinent factors in courts' superiority assessments include:

- Class members' interests in "individually controlling the prosecution or defense" of separate actions;

- The extent and nature of any litigation "concerning the controversy already begun" by or against class members;

- The "desirability or undesirability" of concentrating the litigation; and

- Likely difficulties in managing a class action

*Id.*; *see also Menocal*, 882 F.3d at 915. A Rule 23(b)(3) class action is superior when it allows for the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* (quotations omitted); *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quotations omitted)).

After considering the above factors, adjudicating Plaintiff White's implied warranty claim on a class basis is superior to other methods of adjudication. Given the nature of Plaintiff White's claim, concentrating the litigation is desirable, and the Court discerns few difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). This is not, for instance, a case where Plaintiff White seeks to certify a class of what are essentially personal injury cases, where class members may have individualized interests in prosecuting their own, separate actions. *Cf. In re Pac. Fertility Ctr. Litig.*, No. 18-CV-01586-JSC, 2020 WL 3432689, at *7 (N.D. Cal. June 23, 2020) ("Given . . . the personal and private nature of the claims, each absent class member has a strong interest in individually prosecuting an action should the member so choose." (citations omitted)).

Moreover, Plaintiff White identifies evidence indicating the relatively low recovery for each class member, arguing this further demonstrates the superiority of class-wide adjudication of his implied warranty claim (ECF No. 55 at 23). The Court agrees. *See, e.g., Amchem*, 521 U.S. at 617; 2 Newberg and Rubenstein on Class Actions § 4:64 (6th ed.) ("The doctrinal requirement of superiority is meant to assist courts in identifying those cases in which the money damage class action . . . would be a better form of litigation than available alternatives . . . . most classically, when many individuals have small damage claims, a class action is especially appropriate because absent a class suit . . . . [o]ne of the core purposes of the class action is to enable the pursuit of such 'negative value' cases, lest a wrongdoer escape liability by doing lots of little wrongs." (footnotes omitted)). And Defendant's arguments—almost all of which the Court has previously rejected—fail to persuade otherwise (*see* ECF No. 61 at 35). Accordingly, Plaintiff White has met his Rule 23(b)(3) superiority burden.

\* \* \*

Certification of Plaintiff White's proposed class is appropriate. He has satisfied Rule 23(a) and Rule 23(b)(3)'s requirements by a preponderance of the evidence. The Court is mindful, of course, that certifying Plaintiff White's proposed class is not dispositive of his—or any class members'—implied warranty claim. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen*, 417 U.S. at 178; *see also Shook*, 386 F.3d at 971. After conducting its "rigorous analysis" of the class certification requirements, the Court answers this question affirmatively. *See Wal-Mart*, 564 U.S. at 351.

## IV. CONCLUSION

Consistent with the above analysis, Plaintiff White's Motion for Class Certification (ECF No. 54) is GRANTED. Pursuant to Federal Rule of Civil Procedure 23(b)(3), Plaintiff White's class as proposed in the Motion for Class Certification is certified for the implied warranty claim. Plaintiff Roy White is named as a representative of the class. Pursuant to Federal Rule of Civil Procedure 23(g), DiCello Levitt LLC and Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. are appointed as class counsel.

DATED this 5th day of May 2023.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

35