IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-00410-CNS-MEH

ROY WHITE, individually and on behalf of all others similarly situated,

   Plaintiff,

v.

GENERAL MOTORS LLC,

   Defendant.

___

# ORDER

Defendant General Motors LLC (GM) moves for summary judgment on Plaintiff Roy White's remaining claims. ECF No. 97. For the reasons below, the Court grants GM's motion.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiff White filed a Class Action Complaint against GM in February 2021, alleging that GM's Generation IV Vortec 5300 Engines (Gen IV LC9 Engine) have an "inherent . . . excessive oil consumption problem," which Plaintiff calls the "Oil Consumption Defect." ECF No. 1, ¶ 7. Plaintiff alleges that the primary cause of the Oil

---

[1] The background facts are drawn from parties' summary judgment briefings, *see* ECF Nos. 97, 104, 107, and the stipulations contained in the parties' final pretrial order, ECF No. 115. The Court also provided a detailed background in its order granting Plaintiff's motion for class certification, ECF No. 82, and its order granting in part and denying in part GM's motion to dismiss, ECF No. 48.

1

Consumption Defect is the allegedly defective piston rings that GM uses in the Gen IV LC9 Engines. *Id.*, ¶ 8; ECF No. 104, ¶¶ 1–10. Plaintiff also argues that GM knew of the Oil Consumption Defect as early as 2008 and concealed it from consumers. ECF No. 104, ¶¶ 11–15. Plaintiff argues that the defect poses risk of damage to the Gen IV LC9 Engines which, in turn, poses serious safety risks to drivers. *Id.*, ¶ 23.

The parties agree that the Class Vehicles are defined and limited to the following GM-manufactured vehicles:

> 2011-2014 Chevrolet Avalanche, 2011-2014 Chevrolet Silverado, 2011-2014 Chevrolet Suburban, 2011-2014 Chevrolet Tahoe, 2011-2014 GMC Sierra, 2011-2014 GMC Yukon, and 2011-2014 Yukon XL manufactured on or after February 10, 2011 with Generation IV 5.3 Liter V8 Vortec 5300 LC9 Engines (the Gen IV LC9 Engines) and purchased or leased in the State of Colorado. Any vehicle that has received free upgraded piston rings under warranty is excluded from the definition of Class Vehicle.

ECF No. 115 at 5. Plaintiff purchased a Class Vehicle—specifically a 2011 GMC Sierra equipped with a "Generation IV LC9 Vortec 5300 engine"—in 2012. *Id.*

**B.  Relevant Procedural Background**

On February 29, 2024, the Court issued its Federal Rule of Evidence 702 order concerning Plaintiff's technical expert, Dr. Werner Dahm. ECF No. 120 (granting in part and denying in part GM's motion to exclude). GM moved to strike Dr. Dahm's opinions that the ring wear is "the root cause" of the alleged Oil Consumption Defect, and that the same Oil Consumption Defect is present in all Class Vehicles. *Id.* at 13 (summarizing GM's position outlined in ECF No. 69 at 10–11). GM argued that his opinions are not based on sufficient facts or data because he did not test, inspect, examine, or physically

2

handle any Class Vehicle, Gen IV LC9 Engines, or Gen IV LC9 Engine components. *Id.* For those reasons, GM argued that his opinions are unreliable.[2] *Id.* at 12–13. The Court agreed and ruled that Dr. Dahm could not testify that defective piston rings are the root cause of the alleged oil consumption defect, and that the oil consumption defect is present in all Class Vehicles. ECF No. 120 at 11–21.[3]

## II. LEGAL STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003); Fed. R. Civ. P. 56(a). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine

---

[2] For example, Dr. Dahm opined that the piston ring wear was the root cause of the Oil Consumption Defect, and that the same defect was present in *all Class Vehicles*. However, Dr. Dahm admitted that he did not test or inspect any Class Vehicle or Gen IV LC9 Engines. ECF No. 120 at 15; Dahm Deposition at 70:14–21 ("Q. [Y]ou did not inspect any engine components as part of your work in this case, correct? A. That's correct. By 'inspect,' you mean physically touch and look at? Correct. Q. Physically touch and look at. . . . [Y]ou did not physically inspect any engines? A. That's correct."); *id.* at 73:19–21 ("Q. [D]id you perform any oil consumption test on any vehicle? A. No, I did not."); *id.* at 91:6–10 ("Q. And you did not conduct any independent testing or inspection of any LC9 engine to try to reach a determination about what would be inadequate about the piston ring system; is that right? A. That's correct."). By way of another example, the Court found it troubling that Dr. Dahm conceded that only 3% of the Class Vehicles ever needed new piston assemblies for any reason during the 100,000-mile warranty period despite his conclusion that the defect is present in all Class Vehicles. ECF No. 120 at 16. The Court found that the "analytical gap between the data"—that only 3% of the Class Vehicles ever needed new pistons—and "the opinion offered"—that the defect is present in all vehicles—was "simply too great." *Id.* (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).

[3] The Court, however, rejected GM's argument that Dr. Dahm is not qualified to provide any opinions in this case, instead finding that he is sufficiently qualified to provide general technical opinions concerning the inner workings of an automobile engine. ECF No. 120 at 9–11.

issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.  ANALYSIS

GM advances two general arguments in its summary judgment motion. First, GM argues that Plaintiff's claims are time-barred by Colorado's three-year statute of limitations. ECF No. 97 at 11. Second, because the Court excluded Dr. Dahm's root cause opinions, GM argues that Plaintiff cannot prove a required element (causation) of his remaining breach of implied warranty claim. ECF No. 97 at 14–16.[4] The Court addresses each argument in turn.

#### A.  Statute of Limitations

GM argues that Colorado's three-year limitations period bars Plaintiff's claims. ECF No. 97 at 11. Plaintiff argues in response that GM fraudulently concealed the alleged Oil Consumption Defect, and therefore, his claims were tolled. ECF No. 104 at 15. Under the facts of this case, the Court finds that this issue is not appropriate for summary judgment.

---

[4] GM also argues that it is entitled to summary judgment on Plaintiff's express warranty claim for two additional reasons: (a) the 2011 limited warranty does not cover the alleged design defect, and (b) there is no evidence that Plaintiff sought and was denied repair during the warranty period. ECF No. 97 at 18–20. Plaintiff expressly chose not to respond to GM's arguments on this claim. ECF No. 104 at 1 n.1; *see also* ECF No. 115 (Proposed Final Pretrial Order) ("Plaintiff White will be dismissing his individual claim for Breach of Express Warranty, for which he did not seek class certification."). The Court therefore grants summary judgment in favor of GM on Plaintiff's express warranty claim. Only Plaintiff's Breach of Implied Warranty of Merchantability claim remains. *Id.* at 5–6.

"Ordinarily, the accrual date of a claim and the corresponding issue of whether the statute of limitations has expired are questions of fact for a jury to resolve." *City & Cnty. of Denver v. Bd. of Cnty. Comm'rs of Adams Cnty.*, 543 P.3d 371, 377 (Colo. 2024). Only where material facts are undisputed may a court answer this question as a matter of law. *Id.*

Here, Plaintiff cites competent evidence to create a genuine fact dispute as to whether GM concealed the alleged defect. For example, Plaintiff points to the alleged misleading GM technical service bulletins (TSBs) that told dealers and service centers how to respond to complaints of excessive oil consumption in the Class Vehicles. ECF No. 104 at 16. Plaintiff argues that this was a quick "fix" to avoid the expensive piston assembly replacement. *Id.* (comparing the $574 "fix" to the $2,700 assembly replacement). The *Siqueiros* court held that evidence of this purported "fix" was sufficient to show active concealment. *See Siqueiros v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2023 WL 3919462, at *23 (N.D. Cal. June 8, 2023) (summarizing order on summary judgment in the court's order denying GM's renewed motion for JMOL); *see also BP Am. Prod. Co. v Patterson*, 263 P.3d 103, 109–10 (Colo. 2011) (recognizing fraudulent-concealment theory).

Because there is a genuine fact dispute over whether GM fraudulently concealed the alleged Oil Consumption Defect, the Court declines to grant summary judgment on statute of limitation grounds.

### B. Proof of Causation

GM argues that Plaintiff cannot prove the existence of the Oil Consumption Defect or establish that the alleged defect caused the Plaintiff's alleged damages absent expert testimony. ECF No. 97 at 15–16. Plaintiff appears to take two approaches to oppose GM's argument. He first argues that causation may be inferred if he provides the jury with evidence that would make the causation inference reasonable. ECF No. 104 at 26 (citing *Nash v. Wal-Mart Stores, Inc.*, 2017 WL 5188339, at *9 (D. Colo. Feb. 15), *aff'd*, 709 F. App'x 509 (10th Cir. 2017)). He then argues that his claim will not require the jury to answer any technical questions thus making expert testimony unnecessary. ECF No. 121 at 1 ("Here, there is no link in the causal chain—from a vehicle defect to unmerchantability—that requires the jury to answer technical questions that are beyond their discernment."). Under the facts of this case—and construing the record and reasonable inferences in the light most favorable to Plaintiff—the Court does not find Plaintiff's arguments persuasive.

In Colorado, expert testimony is generally required to prove causation "when proof of causation requires answering technical questions which are beyond the discernment capacity of laypersons." *Mathison v. United States*, 619 F. App'x 691, 694 (10th Cir. 2015) (citing *Truck Ins. Exch. v. MagneTek, Inc.,* 360 F.3d 1206, 1214–16 (10th Cir. 2004) (applying Colorado law) (expert testimony necessary to prove causation in products liability case); *Nash*, 2017 WL 5188339, at *9 ("Expert testimony is required to prove causation when proof of causation requires answering technical questions which are outside the experience of the average layperson" (citing *Truck*, 360 F.3d at 1214)). Both

6

parties agree that Plaintiff must show causation to prevail on his breach of implied warranty claim (his sole remaining claim).[5]

The issue the Court must answer then is whether Plaintiff's proof of causation would require jurors to answer technical questions that are beyond the experience of average laypersons. The Court finds that it would.

In the final pretrial order, Plaintiff described the nature of his lawsuit as follows:

> The plaintiff in this action is the current owner of a 2011 GMC Sierra truck manufactured by GM. Plaintiff alleges that the Generation IV LC9 engine in his vehicle and in all Colorado Class Members' vehicles *contain a piston ring defect that causes excess oil consumption, and other issues arising from reduced lubricity, in the vehicle's engine.* Plaintiff claims that the excessive oil consumption can harm and disrupt the proper functioning of the engine in myriad ways, up to and including total engine failure, which Plaintiff alleges he experienced. GM denies that there is an "oil consumption defect" in plaintiff's vehicle, much less all Class Vehicles, and denies that it breached any warranties. . . . Plaintiff White, individually and putatively on behalf of the Class, asserts a breach of implied warranty claim under Colorado law.

---

[5] There are six elements of liability for a breach of implied warranty of merchantability claim:

(1) The defendant sold the product at issue;
(2) The plaintiff is a person who was reasonably expected to use, consume or be affected by the product;
(3) The defendant was a merchant with respect to the type of product involved;
(4) The product at issue was not of merchantable quality at the time of sale;
(5) This *breach of warranty caused the plaintiff injuries or damages*; and
(6) Within a reasonable time after the plaintiff discovered or should have discovered the alleged breach of warranty, the plaintiff notified the defendant of such breach.

Colo. Jury Instr., Civil 14:10 (emphasis added).

7

ECF No. 115 at 1–2 (emphasis added).[6] At the highest level, a jury would need to answer whether an alleged design defect in the Generation IV LC9 engine caused premature piston ring wear and excess oil consumption in Plaintiff's vehicle and all other Colorado Class Vehicles. It is therefore difficult to see how a jury would not be forced to answer technical issues outside the experience of ordinary persons. Even Dr. Dahm, Plaintiff's own expert, agrees: "if you took the average person on the street, I don't think there is any way they can come up with this." ECF No. 122-1 (excerpts from Sept. 28, 2023 Evidentiary Hr'g in *Hampton v. Gen. Motors LLC*, No. 6:21-cv-00250).

In the Court's view, the issue here is at least as technical as other issues where courts have determined that expert testimony is required. In *Fischer v. BMW*, for example, the plaintiff was injured when he was changing a flat tire on his vehicle. No. 18-CV-00120-PAB-MEH, 2020 WL 5798526, at *1 (D. Colo. Sept. 29, 2020), *aff'd sub nom.*, No. 20-1399, 2021 WL 5458444 (10th Cir. Nov. 23, 2021). While using the jack provided with the BMW, the vehicle fell off the jack, landed on the plaintiff's hand—crushing and severing a portion of his middle finger. *Id.* The plaintiff put forth a sole liability expert, but the court excluded the expert on Rule 702 grounds. *Id.* at *2. The court then granted summary judgment in BMW's favor after finding that the plaintiff "fail[ed] to identify any other evidence which might support a finding of a design defect." *Id.* at *3. The *Fischer* court stated that it would have granted summary judgment for another reason: the plaintiff would be unable to prove a causal connection between the defect and his injuries absent

---

[6] The parties agreed that the final pretrial order "control[s] the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice." ECF No. 115 at 22.

expert testimony. *Id.* at *4 n.7. The court determined that, "where plaintiff argues that the jack's defective design rendered it unable to support the weight of the car, which caused the car to fall and injure plaintiff, . . . expert testimony would be required to answer such technical questions." *Id.* (citing *Nash*, 2017 WL 5188339, at *10). The court concluded that, "[b]ecause [the expert's] causation opinion was excluded, plaintiff can offer no competent evidence establishing the requisite element of causation." *Id.* (internal citation omitted).

In *Nash*, the plaintiff was injured after he fell from a seven-foot Stanley step ladder. 2017 WL 5188339, at *3. The defendant moved for summary judgment, arguing that the plaintiff could not prove that the ladder was defective or that the defect caused his injury. *Id.* at *9. After excluding the plaintiff's technical expert, the court granted summary judgment in favor of the defendant. *Id.* The court determined that the issue was not "one in which causation is plainly identifiable by an average layperson" because, "to prove causation, [the p]laintiff must identify a complex technical question outside lay competence." *Id.*

Finally, in *Hauck v. Michelin N. Am., Inc.*, the plaintiff tendered an expert to opine on the cause of a tire failure that resulted in the plaintiff's injury. 343 F. Supp. 2d 976, 988 (D. Colo. 2004). After excluding the expert on Rule 702 grounds, the court held that the "plaintiff ha[d] no relevant evidence that the Michelin X tire was defective at any time, or specifically that it failed due to a manufacturing defect, *a matter that is beyond the ambit of common knowledge or experience of ordinary persons*." *Id.* (emphasis added). The court rejected the plaintiff's argument that "summary judgment should be denied because

9

plaintiff can offer as evidence of the 'defect' the plain fact that the tire failed, or delaminated." *Id.*

Plaintiff offers no analogous caselaw where courts permitted a similar technical issue to proceed to trial without expert testimony. In his response to GM's summary judgment, Plaintiff cites a single case—*Nash*—to support his argument that GM's documents and testimony from some of its engineers provide enough evidence that "the jury can easily infer that GM sold Plaintiff White a defective vehicle." ECF No. 104. But *Nash* held that an expert was necessary to prove the plaintiff's ladder defect case, 2017 WL 5188339, at *9, making that case unhelpful to Plaintiff's position. Because Plaintiff hardly addressed the issue in his response, the Court ordered supplemental briefing on the causation issue.

In his supplemental briefing, Plaintiff acknowledged that expert testimony may be required "when proof of causation requires answering technical questions which are beyond the discernment capacity of laypersons." ECF No. 121 at 2 (quoting *Mathison*, 619 F. App'x at 694 for the proposition that "expert testimony [is] necessary to prove causation in products liability case"). But he then argues that the jury will not be asked to "answer technical questions that are beyond their discernment," and thus, "Plaintiff's claim does not require expert testimony." *Id.* As previously explained, the Court disagrees.

Plaintiff only cites two cases in his supplemental briefing addressing the issue of expert testimony. He first attaches a decision from the Eastern District of Missouri in which the court granted class certification in another related Oil Consumption Defect action. ECF No. 121 at 4; *see* ECF No. 121-1 at 10. Plaintiff correctly notes that the court found

10

that the Missouri class claims could be proven without expert evidence. ECF No. 121-1 at 10. That court, however, explained that GM "cite[d] no caselaw requiring" an expert to prove causation to make a prima facie claim under the Missouri Merchandising Practices Act. *Id.* Whether Missouri law (as opposed to Colorado law) requires expert testimony to establish causation when answering technical questions that are beyond the capacity of laypersons is not an issue before the Court.

Plaintiff then cites the *Siqueiros* decision, where a Northern District of California court ruled that "GM's internal documents and deposition testimony from GM's employees created issues of material fact as to whether there was evidence of an oil consumption defect in the Class Vehicles" even after excluding Dr. Dahm's root cause opinions. *Siqueiros v. Gen. Motors LLC*, 676 F. Supp. 3d 776, 793 (N.D. Cal. 2023). The court went on to explain that,

> even if expert testimony were required, expert testimony was presented here that *informed the defect question*. Although Dr. Dahm did not testify that all Class Vehicles consumed an excessive amount of oil or that the piston ring defect was present in all Class Vehicles, he explained the mechanics of engines and role of oil in lubrication as well as the operation of the AFM system. He opined on piston ring wear and its mechanical consequences, including oil consumption, spark plug fouling, engine misfire, and engine breakdown. . . . There was sufficient expert testimony to inform the jury about the basic mechanisms of an engine which allowed jurors to assess the likelihood and *effect of the defect of excessive oil consumption*.

*Id.* at 794 (emphasis added). The provision cited by Plaintiff above, however, addresses the defect issue and not causation directly. More importantly, however, under Colorado law, "[e]xpert testimony is required to prove causation when proof of causation requires

11

answering technical questions which are outside the experience of the average layperson." *Fischer*, 2020 WL 5798526, at *4 (quoting *Nash*, 2017 WL 5188339, at *9). Here, the Court has determined that Plaintiff's case would require the jury to answer technical issues outside the experience of ordinary persons.

To summarize, this case is not one in which causation is plainly identifiable by an average juror. *See Mathison*, 619 F. App'x at 694. Jurors would be asked whether Plaintiff proved that GM's Generation IV LC9 engine contained a piston ring defect that caused excess oil consumption, reduced lubricity, and other issues in the Class Vehicle engines. This issue is more, not less, technical than other causation issues about which courts in this Circuit have required expert testimony. *Compare Nash*, 2017 WL 5188339, at *10 (the plaintiff was required to show that the ladder's "spreader braces caused the Ladder to tip, twist, and collapse"), *with* ECF No. 115 at 4–5 (Plaintiff required to show that the Class Vehicles "contain a piston ring defect that causes excess oil consumption," and that "the excessive oil consumption can harm and disrupt the proper functioning of the engine in myriad ways, up to and including total engine failure, which Plaintiff alleges he experienced"). It is clear to the Court that these are technical questions—a point Plaintiff's expert concedes. *See* ECF No. 122-1 ("[H]ow did I come up with this flow down chart? It is by applying everything I know about what goes on inside a piston driven internal combustion engine, and coupling that with what I know about fluid mechanics, thermodynamics, combustion, heat transfer, and etcetera, etcetera, lubrication. . . . [I]f you took the average person on the street, I don't think there is any way they can come up with this. You have to have that background."). Without expert testimony to prove that

the alleged Oil Consumption Defect caused engine issues in the Generation IV LC9 engine, Plaintiff cannot satisfy an element of his breach of implied warranty claim. Summary judgment is thus warranted.

## IV.  CONCLUSION

Consistent with the above analysis, the Court grants GM's motion for summary judgment, ECF No. 97. The Clerk of Court is directed to close this case.

DATED this 17th day of September 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge